Filed 4/3/24  In re K.E. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.E., a Person Coming Under the Juvenile Court Law. | C099202 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>Z.K.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD239936) |

Appellant Z.K. (mother), mother of the minor, appeals from the juvenile court's order terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends the juvenile court and the Sacramento County

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

Department of Child, Family and Adult Services (Department) failed to adequately comply with the inquiry and notice requirements of the Indian Child Welfare Act (25 U.S.C. § 1900 et seq.) (ICWA). Finding no merit in mother's claim, we will affirm the juvenile court's orders.

## I. BACKGROUND

Because the issue on appeal is limited to compliance with the ICWA, we dispense with a detailed recitation of the underlying facts and procedure.

In March 2021, the minor, then nine years old, was removed from mother's custody due to mother's substance abuse. The Department filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (j), alleging, among other things, prior dependency proceedings involving minor's half siblings, who were freed for adoption after mother's parental rights were terminated.

At the time the petition was filed, the Department reported it had inquired of mother about possible Indian heritage and had reason to believe the minor may be an Indian child with the "Chippewa Tribe possible Black Lake Tribe from Michigan." While mother denied Indian heritage and confirmed her denial in her parental notification of Indian status form (ICWA-020), she indicated the possible Indian ancestry flowed through the minor's father, R.E. (father). According to a 2019 disposition hearing report from a prior dependency involving the parents, father told a social worker that the minor's paternal great-grandmother M.E. was a member of the Chippewa Tribe, possibly the "Black Lake Tribe" from Michigan. Father had also indicated the paternal grandmother and paternal great-grandmother were both deceased. The telephone call with father was reportedly disconnected and the social worker in that proceeding was unable to obtain any further information from father despite numerous attempts to do so.

On March 25, 2021, the juvenile court ordered the minor returned to mother with family maintenance services. Mother filed her completed ICWA-020 form and the court found that, as to mother, there was no reason to believe the minor was an Indian child for

purposes of the ICWA. The court ordered the Department to conduct a due diligence search for father and, if found, inquire as to his Indian heritage.

The April 2021 jurisdiction/disposition and ICWA compliance reports provided information regarding the maternal grandparents, the maternal aunt, and the maternal uncle. Mother and her siblings were raised by the maternal grandparents and then by maternal grandfather after the maternal grandmother left the family. Mother reported the maternal grandmother had mental health issues and was difficult to communicate with because she "was like a child." Mother again denied having Indian ancestry and said she could not provide the names of any of the paternal relatives because that information was "in a box somewhere." The Department emailed the Department of Social Services (DSS) and the Bureau of Indian Affairs (BIA), providing the names and birthdates of both parents and the minor in an effort to determine the family's tribal affiliation, if any. Paternal great-grandmother M.E.'s name was also provided but other information about her was unknown. The Department noted that the names and identifying information for the paternal grandparents and any other paternal relatives were not known and thus were not provided to either agency. The Department sent ICWA inquiries containing the same relative information to the Black Lake Tribe in California and the Chippewa Tribe in Montana.

The Department also filed a declaration of due diligence regarding its search to determine father's whereabouts. Despite searches of various databases, public records, law enforcement records, department of motor vehicle records, child support records, employment records, telephone records, military records, voter registration records, and postal records, and attempts to locate father via inquiry of relatives and nonrelated extended family members and certified mail, the Department was unable to locate father.

In May 2021, the juvenile court authorized emergency detention of the minor following mother's arrest. Mother completed a second ICWA-020 form stating the minor

3

is or may be a member of an Indian tribe, identifying the tribe as "[u]nknown through the father."

The Department filed an amended petition and again indicated there was reason to believe the minor may be an Indian child affiliated with the "Chippewa Tribe possible Black Lake Tribe from Michigan." The juvenile court ordered the minor detained and further ordered the Department to continue its diligent efforts to locate father and to evaluate relatives requesting placement of the minor. The court sustained the amended petition.

In a subsequent May 2021 report, the Department stated maternal grandfather K.K. had previously been assessed for emergency placement but did not meet the requirements due to numerous prior referrals. It was noted that maternal grandfather K.K. had adopted the minor's half siblings, now 19 and 17 years old, one of whom was away attending college and the other of whom lived with the maternal uncle R.K. in Utah. The Department concluded it would withhold its current placement recommendation until maternal grandfather received resource family approval.

The report also noted the Blue Lake Tribe's executive tribal secretary responded to the ICWA inquiry sent to the Black Lake Tribe, confirming the correct name for the tribe was the "Blue Lake Tribe" and stating that, based on the information provided, the minor was not eligible for membership in the Blue Lake Tribe. It was also noted that no response had been received from the Chippewa Tribe.

In its June, July, and August 2021 ICWA compliance reports, the Department updated the juvenile court on its ICWA inquiry efforts. Noting the ICWA may apply, the Department stated father had been interviewed in July 2019, at which time he indicated the minor was an Indian child. During a June 2021 interview, maternal grandfather K.K. stated he did not know if the minor was an Indian child. Maternal grandfather K.K. also provided the Department with extended family information which included the names, dates and places of birth, and dates and places of death of the maternal grandmother, the

4

maternal great-grandmother on mother's paternal side, and the maternal great-grandfather on mother's paternal side; the names of the maternal great-grandmother and great-grandfather on mother's maternal side; and the name and possible affiliated Indian tribes of the paternal great-grandmother on father's paternal side. The Department noted it had yet to receive a response from the Chippewa Tribe.

In its November 2021 ICWA compliance reports, the Department reiterated information from prior reports and stated it provided the known information to several additional tribes: the Grand Traverse Band of Ottawa and Chippewa Indians; the Lac Vieux Desert Band of Lake Superior Chippewa Indians; the Saginaw Chippewa Indian Tribe; and the Sault Ste. Marie Tribe of Chippewa Indians. The Grand Traverse Band and the Lac Vieux Desert Band both confirmed the minor was not eligible for tribal membership. The Department had yet to receive responses from the remaining two Chippewa Tribes.

On November 18, 2021, the juvenile court returned the minor to mother's care under a plan of family maintenance and dismissed as moot the ICWA compliance hearing accordingly. As of April 22, 2022, father's whereabouts were still unknown to the Department.

On December 5, 2022, the Department filed a supplemental petition pursuant to section 387 alleging mother was unwilling or unable to care for the minor due to her ongoing mental health issues, her failure to engage in mental health treatment, and her statement to the Department that she no longer wished to raise the minor. The initial hearing report stated the ICWA may apply, noting ICWA assessment had been discontinued in November 2021 when the minor was returned to mother's care. The report also stated the minor's adult half brother's whereabouts were unknown and his adult half sister resided in Los Angeles. Mother was reportedly homeless.

On December 6, 2022, the juvenile court ordered the minor detained and scheduled ICWA compliance and jurisdiction/disposition hearings. The Department's

jurisdiction/disposition report noted all attempts to contact father were unsuccessful. The report stated the ICWA may apply and referred the court to a January 5, 2023 ICWA compliance report.[2]

Following an incident at his foster home, the minor was moved to maternal grandfather K.K.'s home on January 26, 2023.

On March 10, 2023, the Department reported that, after conducting searches of numerous databases and records, father's whereabouts were still unknown. The Department was also unable to contact mother, whose phone was no longer in service. The Department contacted maternal grandfather K.K., who had no information about father's whereabouts, and left voicemail messages for paternal aunt C.E., who had yet to respond.

On March 24, 2023, the Department filed an ICWA compliance report stating the ICWA may apply based on the following information reported by mother on January 4, 2023: the paternal great-great-grandmother (whose name mother could not remember) was born in Montana and was a registered member of an Indian tribe; mother had paternal family tree documents in a storage unit which she tried to retrieve several days prior but was feeling uncomfortable going through boxes in the storage facility; and a representative of the BIA had previously provided instructions for how mother could enroll the minor in a tribe but mother had not done that because she was concerned the tribe would take custody of the minor. Mother stated she would go to the storage facility "in the next few days" to retrieve the documents.

The ICWA compliance report also indicated the social worker spoke with the minor regarding any ICWA information he might have. The minor reported he had heard mother talking about it, but he did not know the name of any tribe. He also confirmed

---

[2] The January 5, 2023 ICWA compliance report was not included in the record on appeal.

neither he nor mother ever lived on an Indian reservation. The social worker also spoke with maternal grandfather K.K., who reported there was no Indian heritage on his side of the family and that he had no contact with any of the minor's paternal relatives. The social worker spoke again with mother regarding ICWA, but mother could not provide clear or concise information regarding Indian heritage. Mother stated she had no contact with father and had not spoken to any of the minor's paternal relatives since the minor was a baby.

The report also stated that the Blue Lake Rancheria confirmed the minor was not eligible for membership in the tribe. The Department had yet to receive responses from the Chippewa Tribe, the Saginaw Chippewa Indian Tribe, and the Sault Ste. Marie Tribe of Chippewa Indians.

At the March 30, 2023 status hearing, the Department requested additional time to complete its ICWA inquiry, noting it had completed most of its due diligence but needed more time to confirm with the BIA whether the list of Chippewa Tribes previously contacted was sufficient to determine whether the minor might be an Indian child. The juvenile court granted the request and continued the hearing.

The Department filed another ICWA compliance report on May 4, 2023. The report noted the BIA had recently instructed the Department to notice all 21 federally recognized Chippewa Tribes. The Department noticed the following tribes: the Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation of Wisconsin; the Chippewa Cree Indians of the Rocky Boys Reservation of Montana; the Grand Traverse Band of Ottawa and Chippewa Indians of Michigan; the Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin; the Lac de Flambeau Band of Lake Superior Chippewa Indians of the Lac du Flambeau Reservation of Wisconsin; the Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan; the Little Shell Tribe of Chippewa Indians of Montana; the Minnesota Chippewa Tribe – Bois Fort Band (Nett Lake); the Minnesota Chippewa Tribe – Fond du Lac Band; the

7

Minnesota Chippewa Tribe – Grand Portage Band; Minnesota Chippewa Tribe – Leech Lake Band; Minnesota Chippewa Tribe – Mille Lacs Band; Minnesota Chippewa Tribe – White Earth Band; Minnesota Chippewa Tribe of Minnesota; the Red Cliff Band of Lake Superior Chippewa Indians of Wisconsin; the Red Lake Band of Chippewa Indians of Minnesota; the Saginaw Chippewa Indian Tribe of Michigan; the Sault Ste. Marie Tribe of Chippewa Indians of Michigan; the Sokaogon Chippewa Community of Wisconsin; the St. Croix Chippewa Indians of Wisconsin; and the Turtle Mountain Band of Chippewa Indians of North Dakota. As of the date of the report, five of the tribes confirmed the minor was not eligible for membership.

In its June 2023 ICWA compliance report, the Department informed the juvenile court that nine additional tribes confirmed the minor was not eligible for membership. The Department recommended the court find there was no reason to believe the minor was an Indian child and thus the ICWA does not apply. That recommendation was echoed by the Department in its June 2023 selection and implementation report.

At the June 1, 2023 ICWA compliance hearing, the juvenile court found the Department complied with its obligations under the ICWA, there was no reason to believe the minor was an Indian child, and the ICWA did not apply.

On August 8, 2023, the juvenile court adopted the Department's recommended findings and orders, terminated parental rights, and freed the minor for adoption.

## II. DISCUSSION

Mother contends the Department failed to comply with the inquiry and notice requirements of the ICWA by failing to inquire of her or her maternal and paternal relatives to obtain the names and contact information for various extended family members, including mother's half siblings, the minor's half siblings, the maternal uncle, or any of the maternal grandmother's relatives. Therefore, mother contends, there was insufficient evidence to support the juvenile court's finding that the ICWA does not apply. The claim lacks merit.

8

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and the Department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the [Department]'s initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [Department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

9

Here, the Department asked mother about possible Indian heritage when the petition was filed. At that time, mother denied any Indian ancestry on the maternal side. She confirmed her statement in her ICWA-020 form and never wavered from that denial throughout the proceedings. Mother stated she had no contact with father and had not spoken with any of the minor's paternal relatives, whose names she was unable to provide despite claiming she had information regarding the paternal family members in a box in storage. The Department also spoke with the then 11-year-old minor who had no information regarding possible Indian ancestry.

The Department also interviewed maternal grandfather K.K., who stated there was no Indian ancestry on his side of the family. Maternal grandfather provided the Department with the names, and in some cases the dates and places of birth and death, of a number of maternal relatives, some of whom were deceased. He stated he had no contact with any of the minor's paternal relatives, but he was able to provide the name of paternal great-grandmother M.E. and indicated she might be affiliated with the Chippewa Tribe of Montana and the Blue Lake Rancheria of Blue Lake, California.

Despite extensive efforts throughout the proceedings, the Department was unable to locate father to inquire of him regarding possible Indian ancestry on his side of the family. However, inquiry had been made of father in a prior 2019 dependency proceeding in which father stated the paternal great-grandmother M.E. was a member of the Chippewa Tribe and possibly the "Black Lake Tribe" from Michigan. Father had also indicated the paternal grandmother and the paternal great-grandmother were both deceased. In that prior proceeding, the Department was unable to obtain any further information from father despite numerous attempts to do so.

There can be no dispute that representations made by father in the 2019 dependency case, and by mother and maternal grandfather K.K. in the current proceeding, triggered the duty of further inquiry regarding possible Indian heritage with the Chippewa Tribe via father's lineage. (§§ 224.2, subd. (e)(1)-(3), 224.3, subd.

10

(a)(5)(A)-(C); Cal. Rules of Court, rule 5.481(a)(4).)  Based on its conversations with the minor, mother, maternal grandfather K.K., the BIA, and the DSS, as well as the ICWA-020 forms filed by mother, the information from the 2019 dependency proceeding, and the information obtained from the DSS and the BIA, the Department provided detailed information regarding the maternal grandmother, the maternal great-grandparents on mother's maternal and paternal side, and the paternal great-grandmother on father's paternal side to 25 Chippewa Tribes, none of whom responded that the minor was a member or eligible for membership in the tribe.  In determining the Department complied with the ICWA inquiry and noticing requirements and the ICWA did not apply, the juvenile court oversaw numerous ICWA compliance hearings and considered eight ICWA compliance reports.

Mother claims the Department was informed that she had two half siblings (the maternal uncle and the maternal aunt) and another maternal uncle, R.K., who resided in Utah, and that the minor had two half siblings, S. and J., but made no attempt to inquire of those individuals about possible Indian ancestry.  Mother also contends the Department failed to ask mother, the minor, or the maternal grandfather about any of the maternal grandmother's relatives.  We are not persuaded.

The Department spoke with mother numerous times regarding her family and possible Indian heritage.  She provided little information other than to confirm there was no Indian heritage on the maternal side of the family.  Mother informed the Department that the maternal grandmother "was never a mother," was "like a child" and was difficult to communicate with, and left home when mother was a child.  Given her lack of relationship with the maternal grandmother, it is unlikely mother had any significant information regarding maternal grandmother, let alone maternal grandmother's relatives.  And, mother has pointed to nothing in the record suggesting otherwise.

The Department spoke several times with maternal grandfather K.K., who raised mother and her siblings, as well as the minor's two adult half siblings.  Maternal

11

grandfather K.K. provided information regarding the maternal grandmother (e.g., her dates and places of birth and death) and denied Indian heritage on the maternal side of the family. It was unlikely the maternal aunt and uncles, the minor, or the minor's half siblings, all of whom were raised by maternal grandfather K.K., would have more or different information regarding family heritage. Maternal grandfather K.K. was the maternal relative still living and most knowledgeable about the maternal family heritage, and the information obtained from him was most likely to bear meaningfully on the juvenile court's ICWA determination.

It is mother's obligation to present a record that affirmatively demonstrates error. (*In re D.W.* (2011) 193 Cal.App.4th 413, 417-418.) Mother has failed to do so here. We therefore conclude there was sufficient evidence to support the juvenile court's ICWA findings.

## III. DISPOSITION

The juvenile court's orders are affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

BOULWARE EURIE, J.